James **MADDEN**, Libelant,

v.

**UNITED STATES of America,**
**Respondent,**

v.

**BETHLEHEM STEEL CORPORATION,**
Third-Party Respondent.

No. 63–42–C.

United States District Court
D. Massachusetts.

Oct. 24, 1966.

Harry Kisloff, Boston, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Joseph A. Lena, Asst. U. S. Atty., for respondent.

Charles F. Barrett, Boston, Mass., for third party respondent.

OPINION

CAFFREY, District Judge.

This libel, by agreement of proctors for the parties, was tried to the Court on the issue of liability only, I find and rule as follows:

Libelant is a shipyard worker who suffered personal injuries in the course of his employment as a rigger at the Bethlehem Steel Corporation's floating drydock in East Boston. His injuries were incurred while he was assisting in repairs being made by his employer, Bethlehem Steel, on June 19, 1961, to the USS GLACIER, a United States Navy icebreaker. He was and is an experienced rigger who worked for Bethlehem Steel from 1943 to June 19, 1961, with some interruptions, due to military service, to certain strikes which occurred at the shipyard, and to occasional slack periods. During these interruptions he worked in the construction industry as a carpenter's helper and a cement-finisher's helper. For a period of from three to four years immediately prior to the

accident, his rating was that of "rigger, first class," and on June 19, 1961, acting in that capacity, he helped in the reinstallation of one of the twin propellers of the USS GLACIER. The propeller, which weighed about 25 tons, was removed by the use of two 25-ton chainfalls, and a 2-ton chainfall was used to remove the nut from the shaft on which the propeller is seated when properly in position. In order that a master mechanic might inspect the threads of the shaft once the nut and propeller were removed from it, and in order to have an appropriate platform from which to guide the propeller and the lock nut back on to the shaft, a staging was erected on the floor of the drydock. This staging consisted of "horses" 12 to 16 feet high, and three planks each of which was about 12 feet long, 10 inches wide, and two inches thick. The evidence did not make it clear whether these planks when inserted into the horses, were 8, 10, 12 or 14 feet above the deck of the drydock. In any event, the planks were securely locked into the horses at whatever height they were above the deck. Libelant assisted in the erection of this staging and on the day of the accident he went to work on the USS GLACIER at the direction of one Rupert J. Molloy, who ordered leading rigger Stephen Ryan, and a team of riggers which included libelant, to work on this particular job. At the time of the accident, Stephen Ryan, the libelant, William Murray, Henry Murray, and another rigger whose identity is still in doubt, all employees of Bethlehem Steel, were working on or near the staging erected beneath and to the rear of the port propeller. Ryan was in charge of the crew and each received his instructions from Ryan. No railings or life lines were utilized on the staging. In the morning hours, a crane, using the chainfalls, lifted the propeller up into position on the shaft. Between 12:00 and 12:30 p. m., the crew took a break for lunch and then returned to the staging. The nut, which holds the propeller on to the shaft, and which weighs between one-half ton and one ton, was lifted into its approximate position by a 2-ton chainfall which Ryan hooked to the nut while it was on the deck of the drydock. Normally, when the nut is raised by a chainfall, it is raised in very close proximity to the end of the shaft, but on this occasion the nut came up into position about two feet aft of the shaft. Those on the platform attempted to push the nut onto the shaft manually, without success. A two-by-four was then handed up to libelant by someone on the deck. He attempted to push the nut onto the shaft with the two-by-four. A few seconds after he got the nut onto the shaft it popped off, striking libelant who fell from the staging to the deck of the drydock and suffered the injuries which gave rise to this litigation.

■ The theory of the libel herein is set out solely as a case in tort for negligence, despite oral argument of the proctor for libelant that he has also stated a cause of action for breach of warranty of seaworthiness on the part of the United States as owner of the vessel. Suffice it to say that on the evidence adduced at the trial, there has been a total failure of libelant to show that any conduct occurred on June 19, 1961 which was participated in by any officer, enlisted man, civilian employee, or anyone else for whose conduct the United States is legally liable. There has been no showing of any participation by the United States in the erection, equipping, use or supervision of the use of the staging on the drydock from which libelant fell. Libelant was never aboard the USS GLACIER. Absent the positioning of someone into the case for whose conduct the United States is liable, libelant's case in tort for negligence must fail, even assuming in his favor that a negligent act was committed by other employees of Bethlehem Steel.

■■ With regard to libelant's contention that he is entitled to recover against the United States on a breach of warranty of seaworthiness, I rule (1) that libelant has failed to allege a claim for breach of warranty in his libel, and (2) that, assuming in libelant's favor

that the Court indulge in the pure fiction that a claim for breach of warranty were before it, the libel must fail for lack of proof of unseaworthiness for the obvious reason that the vessel, while in drydock, had been effectively withdrawn from navigation by reason of the nature of the repairs that were being performed. A 16,000 ton vessel which has had her twin 25-ton screws removed, which has shut down her engine and is receiving electrical and steam power from a source on shore, which has put half or more of her crew on furlough, and which is in drydock, is not a vessel in operating condition. Hence, her owner makes no warranty of seaworthiness while she is in that condition.

For the above reasons, the libel is dismissed, and the petition of respondent United States under Admiralty Rule 56 is also dismissed.